UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JEFFREY JOSEPH YOUNGLOVE,

                Plaintiff,             Case No. 1:10-cv-422

v.                                                  Honorable Robert Holmes Bell

MICHIGAN DEPARTMENT
OF CORRECTIONS et al.,

                Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Michigan Department of Corrections, Beckwith, Huffman, Buckings, Bastien, Krizan, Schad, Proctor, Watson and the unknown parties described as "Florence Crane Health Care Employment Agents." The Court will serve the complaint against Defendant Gelabert.

**Discussion**

I. <u>Factual allegations</u>

Plaintiff Jeffrey Joseph Younglove presently is incarcerated with the Michigan Department of Corrections (MDOC) and housed at the Florence Crane Correctional Facility (ACF). He sues the MDOC and the following ACF employees: Doctor (unknown) Gelabert; Assistant Deputy Warden (unknown) Beckwith; Resident Unit Manager (unknown) Huffman; Officers (Unknown) Buckings, (unknown) Bastien and (unknown) Watson; Nurses Ardith K. Krizan and J. Schad; Sergeant (unknown) Proctor; and unknown parties described as "Florence Crane Health Care Employment Agents."

Plaintiff alleges that, on January 20, 2010, he slipped and fell while out walking for exercise. He fell backwards, landing on his right arm. He tried to walk it off, but the following day, his elbow was very painful and he felt a bone pushing out of his skin. On January 21, 2010, he submitted a Health Care Kite for urgent treatment, but was not seen by medical staff. He wrote another urgent kite on January 25, 2010, stating that the elbow had been somewhat pulled back into place but continued to burn and ache. Again, he was not seen in health care. On January 29, 2010, he filed a grievance and wrote a letter to MDOC Director Patricia Caruso and other state officials. Plaintiff was scheduled for medical callout on February 8, 2010, but his appointment was rescheduled. On February 12, 2010, he waited for hours on medical callout and was finally seen by a nurse who said the elbow was swollen and that she wanted him to see a doctor. Doctor Gelabert told Plaintiff that he had waited too long for an x-ray. Doctor Gelabert told Plaintiff he would write him a prescription for Motrin to bring down the swelling and the pain.

On February 25, 2010, Plaintiff was seen by the grievance coordinator on his health care grievance. The grievance coordinator asked how the Motrin was working, and Plaintiff advised him that he had never received any Motrin. The grievance coordinator checked and found that the doctor had failed to order Motrin. The grievance coordinator returned with a bag of individual packets of Motrin and told him that if it did not start to feel better in two weeks, he should again kite health care. Because he remained in pain two weeks later, Plaintiff again kited health care. His kite was returned on March 1, 2010, with a note stating that Dr. Gelabert wanted Plaintiff to continue with the current treatment of Motrin, exercises and warm compresses for two more weeks.

On March 17, 2010, Plaintiff was called to health care and asked by a nurse about his elbow. The nurse examined the elbow and said that there was something wrong. The nurse stated that she would schedule an appointment with the doctor. No appointment was scheduled. On March 20, 2010, Plaintiff told Defendant Sergeant Proctor that his elbow was hurting very badly and that he could not take it any longer. While in the dining hall, Plaintiff asked Proctor for help in getting to health care. Proctor took down Plaintiff's information and told Plaintiff that, once the dining hall lines subsided, he would see what he could do and would report to Plaintiff what he had learned. Proctor allegedly never spoke to health care.

On March 23, 2010, Plaintiff saw Physician's Assistant (PA) Kent Filsinger. Filsinger thought he felt bone chips and said it was never too late for x-rays. Filsinger ordered Tylenol and Motrin, together with x-rays. Plaintiff saw PA Ouelette on April 1, 2010 on an unrelated matter. He asked about x-rays, and she said that they had been overlooked. She scheduled him for the x-rays. Plaintiff was finally x-rayed on April 2, 2010.

Plaintiff continued to experience pain. On April 7, 2010, he approached Officer Watson, describing his swollen arm and pain. Watson said he would see what he could do. When Plaintiff saw Watson later, Watson told him that, because health care was closed, all Plaintiff could do was send a kite and go lie down. Plaintiff was called out to health care on April 10, 2010, and he was seen by Dr. Sudhir. Dr. Sudhir asked why he had x-rays taken, and Plaintiff explained his problem. Dr. Sudhir told Plaintiff that she could not find the x-rays or any report of them. She performed a short examination and told him that his right arm was swollen and needed to be treated. She gave him an Ace wrap and put Plaintiff on the urgent callout to see another doctor on Monday. Plaintiff was not called out on Monday. On April 17, 2010, he was called out to see Dr. Sudhir, and he was transported to the hospital for x-rays. The x-rays showed that Plaintiff had a bone chip, and his arm was placed in a cast. On April 21, 2010, Dr. Gelabert called Plaintiff to health care. Gelabert informed Plaintiff that the x-rays had been read incorrectly and that nothing was wrong with Plaintiff's arm. Gelabert therefore removed the cast and told Plaintiff to do some exercises. Plaintiff continues to be in pain.

For relief, Plaintiff seeks monetary damages.

II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Michigan Department of Corrections

Plaintiff may not maintain a § 1983 action against the Michigan Department of Corrections. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782

(1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See*, *e.g.*, *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *2 (6th Cir. Nov. 1, 2000); *Erdman v. Mich. Dep't of Corr.*, No. 94-2109, 1995 WL 150341, at *1 (6th Cir. Apr. 5, 1995); *Cullens v. Bemis*, No. 92-1582, 1992 WL 337688, at *1 (6th Cir. Nov. 18, 1992); *Adams v. Mich. Dep't of Corr.*, No. 86-1803, 1987 WL 36006, at *1 (6th Cir. May 7, 1987). In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). Therefore, the Court dismisses the Michigan Department of Corrections.

        **B.**      **Defendants Beckwith, Huffman, Buckings, Bastien, Krizan & Schad**

Plaintiff's complaint contains no factual allegations against Defendants Beckwith, Huffman, Buckings, Bastien, Krizan, Schad or the unknown parties described as "Florence Crane Health Care Employment Agents." It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Veney v. Hogan*, 70 F.3d 917, 922 (6th Cir. 1995) (where complaint failed to allege wrongdoing by a particular defendant, it fell "far short of the standard that is necessary to weed out meritless actions"), *overruled in other part*, *Goad v. Mitchell*, 297 F.3d 497, 502-03 (6th Cir 2002). Where a person is named as a defendant without an allegation of specific

conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries"); *see also Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003); *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974); *Williams v. Hopkins*, No. 06-14064, 2007 WL 2572406, at *4 (E.D. Mich. Sept. 6, 2007); *McCoy v. McBride*, No. 3:96-cv-227RP, 1996 WL 697937, at *2 (N.D. Ind. Nov. 5, 1996); *Eckford-El v. Toombs*, 760 F. Supp. 1267, 1272-73 (W.D. Mich. 1991). Plaintiff fails to even mention in the body of his complaint Defendants Beckwith, Huffman, Buckings, Bastien, Krizan, Schad or the unknown parties described as "Florence Crane Health Care Employment Agents." His allegations fall far short of the minimal pleading standards under FED. R. CIV. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

### C. Defendants Watson and Proctor

Plaintiff's allegations against Defendants Watson and Proctor are very limited. He complains that he spoke with Defendant Proctor on March 20, 2010 about his continuing pain, and he asked Proctor for help in being seen by health care. Plaintiff states that Proctor told him that he would have to wait until the lines went down in the dining hall. Plaintiff alleges that Proctor never contacted health care. Similarly, Plaintiff alleges that, on April 7, 2010, he stopped Defendant Watson and informed Watson about the lack of treatment and his ongoing pain. Watson said he would see what he could do. Somewhat later, Plaintiff saw Watson and asked about health care. Watson told Plaintiff that he had remembered that health care was closed and that Plaintiff's remedy was to put in a kite.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness

of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Here, Plaintiff's allegations against Defendants Proctor and Watson fall far short of demonstrating deliberate indifference. Although Plaintiff complained to Proctor and Watson about pain, he has not alleged facts suggesting that the seriousness of his injury would have been obvious even to a layman. Nor has he alleged that Proctor and Watson subjectively intended to cause him harm. Instead, both told Plaintiff that they would try to get him seen by health care. By Plaintiff's own allegations, Watson could not do so because health care was closed. Proctor was in the middle of supervising the dining hall when Plaintiff asked, and he apparently neglected to follow-up after that duty was over. At best, Plaintiff's allegations against him sound in negligence.

In sum, Plaintiff fails to state an Eighth Amendment claim against either Proctor or Watson.

### D. Remaining allegations

Upon review, the Court concludes that Plaintiff's allegations against Defendant Gelabert are sufficient to state a claim.

### **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Defendants Michigan Department of Corrections, Beckwith, Huffman, Buckings, Bastien, Krizan, Schad, Proctor, Watson and the unknown parties described as "Florence Crane Health Care Employment Agents" will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendant Gelabert.

An Order consistent with this Opinion will be entered.

Dated: May 19, 2010 　　　　　　　　　　　　　/s/ Robert Holmes Bell  
　　　　　　　　　　　　　　　　　　　　　　ROBERT HOLMES BELL  
　　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE