UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

JEFFREY JOSEPH YOUNGLOVE, #241049

        Plaintiff,

v.                                           Case No.1:10-cv-422

MICHIGAN DEPARTMENT OF         Honorable Robert Holmes Bell
CORRECTIONS, et al.,

        Defendants.        **REPORT AND RECOMMENDATION**
_____/

        This is a civil rights action brought *pro se* by a former state prisoner under 42 U.S.C. § 1983. Plaintiff filed his complaint on April 30, 2010. The events giving rise to this lawsuit occurred at the Florence Crane Correctional Facility (ACF), while plaintiff was an inmate in the custody of the Michigan Department of Corrections (MDOC). Plaintiff alleges that he suffered mental anguish and distress because of the actions and omissions of defendant Dr. Raymond Gelabert. These allegations stem from the healthcare he received for a purported right arm injury. Specifically, plaintiff alleges that Dr. Gelabert failed to order necessary x-rays, failed to order pain medication, and removed a cast after plaintiff was diagnosed with a fractured arm. Plaintiff seeks $50,000 in damages.

        By opinion and order entered May 19, 2010, District Judge Robert Holmes Bell dismissed plaintiff's claims against all defendants except Dr. Gelabert. (docket #s 4, 5). Process was served on the defendant, and the court issued a Case Management Order (docket # 19) granting the parties a six-month period to conduct discovery. The discovery period is now closed. The matter is before the court on defendant Gelabert's motion for summary judgment. (docket # 29). The time

for plaintiff to respond to the motion expired without the filing of a response by plaintiff. For the reasons set forth herein, I recommend that defendant's motion for summary judgment be granted and that judgment be entered in defendant's favor.

## Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Griffin v. Hardrick*, 604 F.3d 949, 953 (6th Cir. 2010). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Moses v. Providence Hosp. Med. Centers, Inc.*, 561 F.3d 573, 578 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see Cady v. Arenac County*, 574 F.3d 334, 339 (6th Cir. 2009). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*,

477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. *See Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see LaQuinta Corp. v. Heartland Properties LLC*, 603 F.3d 327, 335 (6th Cir. 2010).

Although plaintiff elected not to file a response to defendant's motion for summary judgment, the court may not for that reason alone enter judgment against plaintiff. *See Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991); *accord Cacevic v. City of Hazel Park*, 226 F.3d 483, 486 (6th Cir. 2000). Rather, the court is required to examine defendant's summary judgment motion in light of the whole record to ensure that the moving party has satisfied his initial burden.

## Proposed Finding of Fact

Plaintiff alleges that on January 20, 2010, he slipped while walking the grounds of the ACF and fell on his right arm. Plaintiff alleges that his arm began to swell overnight, that he was in considerable pain, and that he felt a bone in his elbow pressing against his skin.[1] (Compl. ¶ 1 at

---

[1] Plaintiff's complaint is verified under penalty of perjury (docket # 1-2 at ID # 11) and it is considered as his affidavit in opposition to defendant's motion. *See El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008); *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000). Legal conclusions, whether by a party in an affidavit or verified complaint, do not suffice to create a genuine issue of fact for trial. *See Doe v. Magoffin County Fiscal Ct.*, 174 F. App'x 962, 966 (6th Cir. 2006); *see also Stine v. State Farm Fire & Cas. Co.,* No. 10-5189, slip op. at 2 (6th Cir. June 27, 2011)(A "conclusory affidavit bypasses the specific-facts requirement of Federal Rule of Civil Procedure 56 necessary to forestalling summary judgment.")

ID # 4).  Plaintiff filed health care kites and a grievance in late January 2010.  (docket # 1-3 at ID #s 13-14, docket # 1-4 at ID # 31).  Dr. Gelabert had no involvement in processing plaintiff's kites and grievance, including the triage process of scheduling plaintiff's initial appointment.  (Gelabert Aff. ¶ 3, docket # 30).

On February 12, 2010, plaintiff appeared for his scheduled medical appointment.  (Compl. ¶ 5).  He informed a nurse of his slip and fall.  The nurse detected a slight swelling in plaintiff's right elbow and referred him to Dr. Gelabert.  (Gelabert Aff. ¶ 3, docket # 30 at ID # 191).  On February 12, 2010, Dr. Gelabert conducted his initial examination.  (Gelabert Aff. ¶ 4).  He noted that plaintiff had mild pain in his right arm with movement.  Dr. Gelabert diagnosed plaintiff's condition as a "sprain/strain of the elbow and or forearm" and prescribed "Ibuprofen (Motrin) 400 mg 3 times a day."  (Gelabert Aff. ¶¶ 4-5, docket # 30 at ID # 194).  Plaintiff states that he did not immediately receive the Motrin[2] that Dr. Gelabert had prescribed.  (Compl. ¶ 7, Gelabert Aff. ¶ 8).  Dr. Gelabert recommended a course of exercise to maintain range of motion in plaintiff's elbow.  (Gelabert Aff. ¶¶ 4-5).

On February 18, 2010, plaintiff asked to be taken off the medication Zoloft.  He did not make any complaint regarding his right arm.  (Gelabert Aff. ¶ 6, docket # 30 at ID # 198).

In early March, plaintiff wrote a kite complaining that Motrin failed to provide him with adequate pain relief.  On March 3, 2010, plaintiff was advised to continue his course of treatment for two more weeks and to re-kite if his problems continued.  (Gelabert Aff. ¶ 7, docket # 30, ID # 205).  On March 17, 2010, plaintiff was seen by Nurse Hope Peek.  Nurse Peek recorded

---

[2] Plaintiff's other daily medications included Prilosec, Hytrin, Zocor, aspirin, Zoloft, Atrovent, Albuterol and Qvar.  (docket # 30 at ID # 193).

plaintiff's complaint that he never received Motrin. Peek gave plaintiff "some Tylenol and non-aspirin." (Compl. ¶ 9). Peek noted swelling in plaintiff's arm, a possible deformity in the elbow, and pain with hyperflexion. (docket # 30 at ID #s 206-07).

On March 23, 2010, plaintiff was seen by Physician's Assistant Ken Filainger, who ordered x-rays of plaintiff's elbow, and prescribed Motrin and Tylenol. (Compl. ¶ 12, docket # 30 at ID #s 208-09). X-rays were taken on April 2, 2010, requisitioned by Dr. Gelabert. (Compl. ¶ 14, docket # 30 at ID # 210). The x-rays "were read to be normal with no evidence of acute osseous abnormality." (Gelabert Aff. ¶ 12).

Plaintiff saw Dr. Bahmini Sudhir on Saturday, April 10, 2010, but she did not have the results of the x-rays taken eight days earlier. Dr. Sudhir gave plaintiff an ace wrap and noted that plaintiff "had Motrin with him." (Gelabert Aff. ¶ 13). On April 17, 2010, Dr. Sudhir sent plaintiff to a hospital for x-rays. A physician's assistant reviewing the April 17, 2010 x-rays observed what he believed was a bone chip, and he placed a cast on plaintiff's right arm. (Gelabert Aff. ¶¶ 15-16). On April 17, 2010, Dr. Sudhir renewed plaintiff's Motrin and Tylenol prescriptions. (Gelabert Aff. ¶ 16).

On April 21, 2010, plaintiff was seen by Dr. Gelabert, who told him that the Physician's Assistant had misread the x-rays and that they revealed no fracture. Gelabert removed the cast to prevent complications related to the unnecessary immobilization of plaintiff's elbow. (Gelabert Aff. ¶¶ 17-18). Plaintiff's course of treatment continued, including a final set of x-rays on April 23, 2010, which returned normal results. Plaintiff's articular structures were well presented and there was no evidence of fracture, dislocation, osteoblastic or osteolytic activity. Plaintiff's soft tissues were described as unremarkable. (Gelabert Aff. ¶ 20). Sayed Sohail, M.D., managed the care

of plaintiff's arm on and after June 30, 2010. (Gelabert Aff. ¶ 23). There is no evidence that plaintiff has suffered permanent damage to his arm.

### Discussion

Plaintiff alleges that Dr. Gelabert was deliberately indifferent to his serious medical needs. As a convicted prisoner, he was entitled to Eighth Amendment protection against cruel and unusual punishment. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. CONST. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 102-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702-03 (6th Cir. 2001).

In *Estelle v. Gamble*, the Supreme Court held that deliberate indifference to a prisoner's serious medical needs, manifested by prison staff's intentional interference with treatment or intentional denial or delay of access to medical care, amounts to the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle*, 429 U.S. at 104-05. In judging the sufficiency of "deliberate indifference" claims, the court must view the surrounding circumstances, including the extent of the injury, the realistic possibilities of treatment, and the possible consequences to the prisoner of failing to provide immediate medical attention. *Westlake v. Lucas*, 537 F.2d 857, 860 n.4 (6th Cir. 1976).

In *Wilson v. Seiter*, 501 U.S. 294 (1991), the Supreme Court clarified the deliberate indifference standard. Under *Wilson*, a prisoner claiming cruel and unusual punishment must establish both that the deprivation was sufficiently serious to rise to constitutional levels (an objective component) and that the state official acted with a sufficiently culpable state of mind (a subjective component). *Wilson*, 501 U.S. at 298. No reasonable trier of fact could find in plaintiff's favor on the objective or subjective components of Eighth Amendment claims against this defendant.

### A. The Objective Component

The objective component of the Eighth Amendment standard requires that a plaintiff be suffering from a serious medical condition. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are serious." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "[D]elay or even denial of medical treatment for superficial, nonserious physical conditions does not constitute a constitutional violation." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir. 2005). "[A] medical need is objectively serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* A non-obvious need for medical care can satisfy the "serious" medical need requirement, but "the inmate must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005).

Notably absent in the record is any evidence which suggests plaintiff's condition was objectively serious. Indeed, after meeting with multiple doctors, nurses, and physician's assistants

over the course of his treatment, and after multiple sets of x-rays, plaintiff has failed to introduce medical evidence to establish that his arm was ever fractured or otherwise seriously injured. Plaintiff apparently seeks to capitalize on the erroneous, temporary diagnosis of a fracture made by a physician's assistant that prevailed for a few days in April of 2010, but plaintiff has presented no medical evidence indicating that this was anything other than a temporary mistake. Without a verifiable serious medical need, the delays in plaintiff's treatment, even if they were substantial, would not constitute a constitutional violation. *Blackmore*, 390 F.3d at 897.

      **B.**    **The Subjective Component**

The second prong under *Estelle* requires a showing of "deliberate indifference" to plaintiff's serious medical need. The Supreme Court held in *Farmer v. Brennan*, 511 U.S. 825 (1994), that deliberate indifference is tantamount to a finding of criminal recklessness. A prison official cannot be found liable for denying an inmate humane conditions of confinement "unless the official knows of and disregards an excessive risk to inmate health or safety." 511 U.S. at 837. The Sixth Circuit's decision in *Miller v. Calhoun County*, 408 F.3d 803 (6th Cir. 2005), summarized the subjective component's requirements:

> The subjective component, by contrast, requires a showing that the prison official possessed a sufficiently culpable state of mind in denying medical care. Deliberate indifference requires a degree of culpability greater than mere negligence, but less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result. The prison official's state of mind must evince deliberateness tantamount to intent to punish. Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference. Thus, an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Miller*, 408 F.3d at 813 (citations and quotations omitted); *see Grose v. Correctional Med. Servs., Inc.*, 400 F. App'x 986, 987-88 (6th Cir. 2010); *Dotson v. Phillips*, 385 F. App'x 468, 471 (6th Cir. 2010) ("Mere negligence does not amount to deliberate indifference, as medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009) ("The subjective standard is meant to prevent the constitutionalization of medical malpractice claims. . . ."); *accord Alspaugh v. McConnell*, No. 08-2330, __ F.3d __, 2011 WL 1938131, at * 5 (6th Cir. May 23, 2011) (Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, "federal courts are generally reluctant to second guess medical judgments.") (citing *Westlake*, 537 F.2d 860 n.5).

Even if plaintiff had provided evidence to fulfill the objective component of the Eighth Amendment standard, plaintiff has not presented evidence sufficient to support the subjective component for a claim of deliberate indifference. Plaintiff makes no specific allegations against Dr. Gelabert. Read liberally, plaintiff's submissions suggest that Dr. Gelabert misdiagnosed the severity of his injured arm during his initial examination on February 12, 2010; that Gelabert failed to order the prescribed Motrin after this visit; and that Gelabert was remiss in removing the cast from plaintiff's arm on April 21, 2010. The record shows that Dr. Gelabert ordered the Motrin he prescribed after his first appointment with plaintiff (docket # 30 at ID # 194) and ordered the x-rays plaintiff desired (*Id.* at ID # 210), the first of several. Nor, as stated above, is there any evidence that plaintiff's arm required a cast, or that the removal of that cast was therefore improper. The record indicates that plaintiff was being treated and that Dr. Gelabert had a clear course of treatment.

In fact, the record shows that plaintiff received a tremendous amount of health care. Plaintiff's complaint admits to receiving at least two sets of x-rays (Compl. ¶¶ 14, 18), meeting on multiple occasions with Dr. Gelabert (*Id.* at ¶¶ 5, 19), Dr. Sudhir (*Id.* at ¶¶ 16, 18), physician's assistants (*Id.* at ¶¶ 12, 13), and nurses (*Id.* at ¶ 5). In its entirety, plaintiff's complaint admits to seven meetings with healthcare professionals, while providing no tangible evidence that a serious injury ever existed. Even plaintiff's evidence -- the numerous health care kites (docket # 1-3 at ID #s 13-15, 17), callout slips (*Id.* at ID #s 18-23) and kite response encouraging him to pursue the full 30-day course of treatment prescribed (*Id.* at ID # 16) -- clearly indicates that he was not denied medical care for his injury.

Plaintiff cannot possibly show an Eighth Amendment violation on this record. No reasonable trier of fact could conclude that Dr. Gelabert was deliberately indifferent to a serious medical need. Plaintiff's claim that defendant failed to diagnose and treat his injury correctly are, at best, state-law malpractice claims. His disagreement with the medical treatment he received at ACF falls far short of supporting an Eighth Amendment claim. *See e.g.*, *Kosloski v. Dunlap*, 347 F. App'x 177, 180 (6th Cir. 2009); *Hix v. Tennessee Dep't of Corr.*, 196 F. App'x 350, 357 (6th Cir. 2006). I find that defendant Gelabert is entitled to judgment as a matter of law.

**Recommended Disposition**

For the reasons set forth herein, I recommend that defendant's motion for summary judgment (docket # 29) be granted and that judgment be entered in defendant's favor on plaintiff's claims against defendant Gelabert.  As this disposes of the last defendant remaining in the case, a final judgment should issue.


Dated:   June 30, 2011                              /s/  Joseph G. Scoville
                                                    United States Magistrate Judge


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). General objections do not suffice. *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).